OPINION
{¶ 1} This is a legal malpractice action. Appellant, Irene Paterek, individually and as executrix of the estate of Edward F. Paterek was awarded judgment following a jury verdict in the amount of $382,000. The verdict of $382,000 was rendered against both appellees, Jonathon Evans ("Evans") and the law firm of Petersen Ibold. Following the verdict, Evans and Petersen 
Ibold filed a motion for judgment notwithstanding the verdict. The trial court reduced the amount of the award to $100,000. On review, we reverse the judgment of the trial court.
 {¶ 2} Evans worked as an attorney for Petersen Ibold. In 1997, he was retained to represent the Patereks in connection with a personal injury lawsuit stemming from injuries sustained by Edward F. Paterek in a motor vehicle accident caused by Kristopher Richardson ("Richardson").
 {¶ 3} Evans filed suit against Richardson on behalf of the Patereks in the Geauga County Common Pleas Court in 1998. This suit was dismissed by the Patereks pursuant to Civ.R. 41(A)(1) in 2000.
 {¶ 4} Evans again filed suit against Richardson in behalf of the Patereks, but the suit was untimely, having been filed beyond the one-year deadline allowed by R.C. 2305.19, and was dismissed by the Geauga County Common Pleas Court.
 {¶ 5} On December 5, 2001, the Patereks were notified by the law firm that it was negligent in failing to timely refile their lawsuit against Richardson.
 {¶ 6} In October 2002, the Patereks filed an action for legal malpractice against Evans and the law firm of Petersen Ibold. Shortly thereafter, Mr. Paterek died and Mrs. Paterek was substituted as his legal representative to represent his interests in the legal malpractice action. She then filed an amended complaint in her representative capacity. The amended complaint restated the allegations of the original complaint. The law firm and Evans filed an answer to the amended complaint in which they admitted liability for failing to timely refile the lawsuit for the Patereks.
 {¶ 7} Mrs. Paterek filed a second amended complaint against the Patereks' own insurance carrier, One Beacon Insurance, in respect to their UM/UIM claim. At the time of the accident, the Patereks maintained $250,000 of UM/UIM coverage. This claim was voluntarily dismissed without prejudice by appellant prior to trial.
 {¶ 8} During discovery, appellant was advised that the limit of Richardson's insurance coverage was $100,000.
 {¶ 9} The law firm and Evans filed a motion for partial summary judgment. They argued that the maximum recovery to be had by appellant was $100,000, representing the maximum insurance coverage Richardson had in force at the time of the accident. They further argued that appellant had a viable UM/UIM claim for $250,000. Thus, they requested an order from the trial court capping appellant's damages at $100,000.
 {¶ 10} In overruling the motion for partial summary judgment, the trial court stated: "[a]lthough Plaintiffs will have to prove the `case within the case', such proof does not have to go so far as to demonstrate that the tortfeasor in the underlying case was not judgment proof or, conversely stated, that the tortfeasor had assets from which a judgment could be collected."
 {¶ 11} Prior to trial, the parties entered into a stipulation that Richardson did not have personal assets nor the earning capacity, either at the time of the accident or at the time of the jury verdict, to satisfy a judgment in excess of $100,000.
 {¶ 12} The trial court charged the jury on the issue of damages as follows:
 {¶ 13} "You have been previously instructed that the defendants Petersen Ibold and Jonathon Evans were negligent. If you find that the defendants' negligence was the proximate cause of plaintiffs' damages, you will decide by the greater weight of the evidence an amount of money that will reasonably compensate the plaintiffs for the actual injuries proximately caused by the negligence of the defendants. The first consideration is to determine what damages, if any, may have been sustained by Edward Paterek and/or Irene Paterek as a result of the automobile accident on May 28th, 1997."
 {¶ 14} The trial court then spelled out for the jury the types of special damages and injuries the jury could consider in making a damages award. It then elaborated on other damages the jury could consider:
 {¶ 15} "The second consideration is to determine what damages, if any, may have been sustained by Edward Paterek and/or Irene Paterek as a result of the failure of defendants to successfully prosecute the claims against [Richardson]. Any amounts that you have determined will be awarded to the plaintiffs for any element of damages shall not be considered again or added to any other element of damages."
 {¶ 16} On December 20, 2004, the trial court entered judgment pursuant to the jury verdict of $382,000. Evans and Petersen 
Ibold timely filed a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B). In their motion, they asked the trial court to reduce the amount they were obligated to pay from $382,000 to $100,000.
 {¶ 17} On February 16, 2005, the trial court issued an order reducing the jury verdict from $382,000 to $100,000, together with a decision explaining its reasons for doing so. The trial court explained its rationale thusly:
 {¶ 18} "In this action, the jury determined that plaintiff was entitled to a total of $382,000 in damages. In response to interrogatories submitted by plaintiffs, the jury demonstrated that it reached its damages amounts based upon Mr. Paterek's medical bills, his pain and suffering, his inability to perform usual activities, and upon Mrs. Paterek's loss of consortium. The amounts the jury determined for each of the aforementioned elements of damages equal the total amount of the jury award. Although the instructions given to the jury permitted them to consider awarding damages beyond the amounts of [the Patereks'] underlying personal injury and loss of consortium claims, the interrogatories establish that the jury chose not to do so. [Footnote omitted.] The jury limited its award to those sums it determined arose from Mr. Paterek's personal injury and Mrs. Paterek's loss of consortium."
 {¶ 19} The trial court then went on to consider whether the verdict in favor of appellant should be upheld, because of the possibility of collecting UM/UIM proceeds against the Patereks' own insurer, and held that it could not speculate that someday appellant might "hit the jackpot" and actually collect another $150,000 against the Patereks' own insurer.
 {¶ 20} Appellant timely filed an appeal from the judgment entry of February 16, 2005, granting the motion for judgment notwithstanding the verdict.
 {¶ 21} Appellant has raised two assignments of error. The first assignment of error is as follows:
 {¶ 22} "The trial judge erred, to plaintiff-appellant's considerable detriment, by granting defendant-appellees' motion for judgment notwithstanding the verdict and reducing the total judgment from $382,000.00 to $100,000.00."
 {¶ 23} In reviewing a trial court judgment where a motion for judgment notwithstanding the verdict has been granted, an appellate must address the issue as one of law:
 {¶ 24} "`A motion for directed verdict or a motion for judgment notwithstanding the verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.'"[1]
 {¶ 25} Therefore, the standard of appellate review of a trial court's ruling on a motion for judgment notwithstanding the verdict is de novo.[2]
 {¶ 26} Civ.R. 50(B) provides, in relevant part:
 {¶ 27} "Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion[.]"
 {¶ 28} The trial court applies the following test to a motion for judgment notwithstanding the verdict:
 {¶ 29} "The trial judge must construe the evidence most strongly in favor of the non-movant and if upon all the evidence there is substantial evidence to support the non-movant's position upon which reasonable minds may reach different conclusions, the motion must be denied. * * * The trial judge does not determine the weight of the evidence or the credibility of the witnesses, * * * and although he examines the materiality of the evidence, he does not look at the conclusions to be drawn."[3]
 {¶ 30} This court's analysis under the first assignment of error turns on whether the trial court was correct in reducing the amount awarded in the verdict to a lesser amount due to the uncollectability of Richardson. We agree with the trial court that "it is clear that Plaintiff could not have received more than $100,000 from [Richardson] and his insurer." However, we do not agree with the trial court's statement that "the damages actually caused by the negligence of [Evans and Petersen Ibold] must be limited to the amount that the Plaintiff could be reasonably certain of receiving had [Evans and Petersen Ibold] not been negligent," because in limiting appellant's damages to the amount she could be expected to receive, the trial court was adopting the "but for" test and the "case within a case" analysis, both of which have been rejected by the Supreme Court of Ohio in the case of Vahila v. Hall.[4]
 {¶ 31} A discussion of the decision in the case of Vahila v.Hall will be helpful to this analysis.
 {¶ 32} The plaintiffs in that case sued their former attorneys for negligent representations conducted by the attorneys in various civil, criminal, and administrative matters. The trial court granted summary judgment to the attorneys, because the plaintiffs were required to, but could not, prove that they would have been successful in the underlying civil, criminal, and administrative matters in which the alleged malpractice had occurred. The appellate court affirmed the summary judgment.
 {¶ 33} On appeal to the Supreme Court of Ohio, that court rejected the "but for" test inherent in the "case within a case" approach:
 {¶ 34} "[W]e reject any finding that the element of causation in the context of a legal malpractice action can be replaced or supplemented with a rule of thumb requiring that a plaintiff, in order to establish damage or loss, prove in every instance that he or she would have been successful in the underlying matter(s) giving rise to the complaint."[5]
 {¶ 35} That court based its decision on "[t]he inequity of requiring appellants to prove that they would have been successful in the underlying matters giving rise to their malpractice action[.]"[6]
 {¶ 36} That court went on to hold as follows:
 {¶ 37} "[W]e hold that to establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss. * * * Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim. * * * However, we cannot endorse a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter."[7]
 {¶ 38} The Vahila case turned on the issue of proximate cause. By incorrectly granting the motion for judgment notwithstanding the verdict, the trial court in the instant matter was not acting erroneously with respect to proximate cause, but with respect to damages.
 {¶ 39} In other words, the trial court, in its decision, limited consideration of damages to the collectability of damages in the underlying case against Richardson. This was a "case within a case" analysis. The trial court stated that a "case within a case" approach is necessary to successfully prosecute a legal malpractice action: not only must the plaintiff prove the elements of negligence against the attorney, but he must also prove as part of his case-in-chief that the underlying case handled by the attorney could have been prosecuted successfully and to plaintiff's benefit had the attorney not committed malpractice. By this approach, the underlying case serves as a measuring stick for the amount of recovery to be had against the attorney for committing malpractice. Thus, when the trial court said that the jury verdict only reflected the jury's consideration of the Patereks' injuries attributable to the motor vehicle accident, and found that, under the circumstances, only $100,000 was recoverable from the Richardson's liability insurance carrier, it was saying, in effect, that the "case" against Evans and Petersen Ibold was admitted, but that the value of the underlying "case" was limited to the $100,000 that could be collected from Richardson's liability insurance carrier.
 {¶ 40} As stated above, the "case within a case" approach was rejected by the Supreme Court of Ohio in Vahila v.Hall.[8]
 {¶ 41} As we see it, the trial court incorrectly melded the rejected notion of a "case within a case" developed in the proximate cause decisions onto the element of damages in concluding that appellant's damages were limited to the liability coverage maintained by Richardson. In effect, the trial court made collectability from Richardson an element of appellant's case. We hold that collectability was not an element of the case.
 {¶ 42} The trial court's analysis actually creates a new legal theory in the area of legal malpractice: a case within a case within a case. That is, the trial court was unwilling to extend its own notion of collectability to a second level, meaning that it was unwilling to predict that on top of the $100,000 appellant could collect from Richardson's insurer she could also collect another $150,000 from the Patereks' own insurer under their UM/UIM coverage. We hold today that this exercise misses the point of the Vahila v. Hall case and is irrelevant in light of that case. The issue of whether appellant could collect from the Patereks' own carrier on their UM/UIM coverage was not submitted to the jury, and this court declines to weigh in as to whether such proceeds would ever be received. That issue is certainly not before us in this appeal.
 {¶ 43} Viewing the instant case from the standpoint of damages, damages are recoverable in the full amount. As stated by the Supreme Court of Ohio, in the case of Fantozzi v. SanduskyCement Prod. Co.:
 {¶ 44} "The fundamental rule of the law of damages is that the injured party shall have compensation for all of the injuries sustained. * * * Compensatory damages are intended to make whole the plaintiff for the wrong done to him or her by the defendant. * * * Compensatory damages are defined as those which measure the actual loss, and are allowed as amends therefore."[9]
 {¶ 45} Under Civ.R. 50(B) the trial court had no duty to examine the collectability of Richardson. This consideration was irrelevant under Vahila and Fantozzi. We accept that the jury limited its verdict of $382,000 to the personal injuries suffered by the Patereks, and did not enhance the award with any other damages that may have related to the malpractice committed by Evans and Petersen Ibold, but this fact by itself did not enable the trial court to step in and reduce the jury verdict due to considerations of collectability of the verdict. Its duty was to examine whether the verdict was supported by "substantial evidence," not whether the verdict was collectible.
 {¶ 46} The first assignment of error is with merit.
 {¶ 47} Appellant's second assignment of error is as follows:
 {¶ 48} "The trial judge abused his discretion by denying plaintiff-appellant's motion for pre-judgment interest."
 {¶ 49} On December 28, 2004, following the entry of judgment of the trial court pursuant to the jury's verdict, appellant filed a motion for prejudgment interest. The trial court overruled this motion on February 16, 2005.
 {¶ 50} Appellant does not support this assignment of error with argument that the trial court committed error in failing to grant her motion for prejudgment interest. Instead, she argues that, in the event the trial court's judgment is reversed pursuant to assignment of error number one, she should be entitled to a hearing on her motion for prejudgment interest. It turns out that this assignment of error is not truly an assignment of error, but is more in the nature of a request for relief in the event the judgment of the trial court is reversed. Thus, appellant argues: "[i]n the event that this Court concludes that [appellant] is entitled to more than a judgment of $100,000 against [Evans and Petersen Ibold], then the denial of pre-judgment interest should also be reversed and the proceedings remanded for a hearing in accordance with R.C. 1343.03(C)."
 {¶ 51} Therefore, appellant does not assert that the trial court abused its discretion in overruling her motion for prejudgment interest. Instead, she asks for her day in court to present the merits of her motion in the event the judgment of the trial court is reversed.
 {¶ 52} We, therefore, find this assignment of error to be without merit, but in light of our decision under the first assignment of error, we do order this matter remanded to the trial court for a hearing on the merits of appellant's motion for prejudgment interest.
 {¶ 53} The judgment of the trial court is reversed, and this matter is remanded to the trial court. The trial court is ordered to reinstate its original judgment entry awarding damages in the amount of $382,000 pursuant to the jury verdict. The trial court is also ordered to conduct an evidentiary hearing on the merits of appellant's motion for prejudgment interest.
O'Toole, J., concurs,
Grendell, J., dissents with Dissenting Opinion.
[1] Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66,68, quoting O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph three of the syllabus.
[2] Natl. City Bank v. Rhoades, 150 Ohio App.3d 75,2002-Ohio-6083, at ¶ 53.
[3] (Internal citations omitted.) Cardinal v. Family Foot CareCenters, Inc. (1987), 40 Ohio App.3d 181, 183, citing Ruta v.Breckenridge-Remy Co., supra, at 69.
[4] Vahila v. Hall (1997), 77 Ohio St.3d 421.
[5] Id. at 426.
[6] Id. at 427.
[7] (Internal citations omitted.) Id. at 427-428.
[8] Id.
[9] (Internal citations omitted.) Fantozzi v. Sandusky CementProd. Co. (1992), 64 Ohio St.3d 601, 612.