PATEREK, EXR., APPELLEE, *v.* PETERSEN & IBOLD ET AL., APPELLANTS.

[Cite as *Paterek v. Petersen & Ibold,* 118
Ohio St.3d 503, 2008-Ohio-2790.]

(No. 2006–1811—Submitted September 19, 2007—Decided June 18, 2008.)

---

PFEIFER, J.

{¶ 1} We hold today that in an attorney-malpractice case, proof of the collectibility of the judgment lost due to the malpractice is an element of the plaintiff's claim against the negligent attorney.

## Factual and Procedural Background

{¶ 2} This is an attorney-malpractice case involving the mishandling of a personal-injury claim. On May 28, 1997, Kristopher Richardson negligently injured Edward Paterek in an automobile accident. Richardson had no personal assets or earning capacity with which to compensate Paterek for his injuries, but did carry $100,000 of auto liability coverage.

{¶ 3} After the accident, Paterek and his wife, appellee Irene Paterek, retained an attorney, Jonathon Evans, of the law firm of Peterson & Ibold, appellants, to represent them in a personal-injury action against Richardson. On May 11, 1998, Evans filed a lawsuit against Richardson, but subsequently dismissed it on October 6, 2000, without prejudice. He then failed to refile the claim within one year of the dismissal, and the suit was dismissed for want of prosecution. Both Evans and Peterson & Ibold admitted liability for the damages proximately caused by Evans's breach of the standard of care.

{¶ 4} On October 2, 2002, the Patereks filed this legal-malpractice suit. Edward Paterek died on February 2, 2003, and Irene was named executor of his estate on March 18, 2003; Irene also maintained a claim in her own right.

{¶ 5} On September 17, 2003, appellants filed a motion for partial summary judgment. They argued that since the maximum recovery available to Irene from the tortfeasor was $100,000, the court should cap any damages against the appellants at that amount.

{¶ 6} The trial court overruled appellants' motion on October 21, 2003, holding that the collectibility of a judgment against the underlying tortfeasor was not an element Irene would have to prove at trial:

{¶ 7} "Although Plaintiffs will have to prove the 'case within the case', such proof does not have to go so far as to demonstrate that the tortfeasor in the underlying case was not judgment proof or, conversely stated, that the tortfeasor had assets from which a judgment could be collected."

{¶ 8} On May 5, 2004, Irene filed a second amended complaint, raising a claim for underinsured-motorist ("UIM") coverage against One Beacon Insurance ("One Beacon"). The Patereks owned a One Beacon policy with UIM coverage with limits of $250,000.

{¶ 9} On November 22, 2004, Irene voluntarily dismissed One Beacon from the proceedings, without prejudice. The legal-malpractice claim against the firm and Evans proceeded to trial on December 13, 2004. The parties jointly submitted stipulations to the court. The appellants stipulated that Richardson was at fault in the underlying accident and that Edward Paterek was not comparatively negligent. The appellants also admitted that Evans missed a filing deadline, causing the Patereks to lose their cause of action. The parties stipulated that

Richardson carried a $100,000 automobile liability insurance policy that would have been available to satisfy a judgment against him. The parties further stipulated that Richardson had no other assets:

{¶ 10} "Kristopher Richardson did not at the time of the accident, nor does he presently, have any personal assets or earning capacity sufficient to satisfy any judgment against him in excess of the $100,000 automobile liability coverage."

{¶ 11} The parties also stipulated that the Patereks held a valid UIM policy:

{¶ 12} "[T]he Plaintiffs had underinsured motorist coverage with Beacon One [sic] in the amount of $250,000 at the time of the accident in question ($150,000 of which may be available to the plaintiffs to cover damages, if necessary, after set-off of the $100,000 available from the tortfeasor's policy)."

{¶ 13} Finally, the parties stipulated that "these stipulations will be entered into the record by the Court but the jury will only be told that a filing deadline was missed by Mr. Evans (and the firm) and that there is no issue of liability regarding the underlying accident. The jury will be asked to just return a verdict regarding the value of the Plaintiff's damages."

{¶ 14} The court thus advised the jury at the outset of the proceedings that they needed to consider only the amount of damages suffered by the Patereks.

{¶ 15} At the close of the plaintiff's case, the defense moved the court to limit the damages in the case to the amount of Richardson's insurance policy. Consistently with its summary-judgment ruling, the trial court again rejected the argument that damages should be capped at $100,000.

{¶ 16} On December 15, 2004, the jury returned a verdict of $382,000 for Irene Paterek. In response to interrogatories, the jury stated that it had awarded the decedent's estate $282,000 for his medical bills, pain and suffering, and inability to perform usual activities, and $100,000 for loss of consortium to Irene.

{¶ 17} On December 30, 2004, appellants filed a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B). In its February 16, 2005 decision, the trial court granted that motion, holding that the Patereks' recovery was restricted to the $100,000 liability policy limits maintained by the original tortfeasor, Richardson.

{¶ 18} The court based its decision on two factors. First, the court found that the jury's award was based only upon the injuries suffered by the Patereks in the automobile accident; the jury did not find any separate injuries related to the firm's breach: "Although the instructions given to the jury permitted them to consider awarding damages beyond the amounts of Plaintiff's underlying personal injury and loss of consortium claims, the interrogatories establish that the jury chose not to do so. The jury limited its award to those sums it determined arose

from Mr. Paterek's personal injury and Mrs. Paterek's loss of consortium." (Footnote omitted.)

{¶ 19} Second, the court found that the Patereks had failed to submit any proof that Richardson would have been able to pay anything beyond the amount of his insurance: "It can be argued that the value of the opportunity to collect in this case was limited to the policy limits of $100,000. It is also conceivable that an expert witness could be found who would opine that statistically the value of a $382,000 judgment against a person of Mr. Richardson's age and financial status is of a particular worth. If that is so, no such expert testified in this trial."

{¶ 20} The court concluded:

{¶ 21} "The determination that Plaintiff suffered damages in the amount of $382,000 as a result of Kristopher Richardson's negligence does not mean that Plaintiff suffered damages in that same amount as a result of the negligence of Jonathon Evans and Petersen & Ibold. It is possible that Plaintiff could be entitled to damages from Defendants in addition to those resulting from the injuries caused by Mr. Richardson upon proper proof that additional damages existed. In the same vein, although Mr. Richardson caused injuries that were assigned a monetary value of $382,000, the damages actually caused by the negligence of these Defendants must be limited to the amount that Plaintiff could be reasonably certain of receiving had Defendant not been negligent."

{¶ 22} The trial court did not address the issue of the Patereks' UIM policy.

{¶ 23} Irene appealed the trial court's decision, and on August 14, 2006, the Eleventh District Court of Appeals reversed the lower court's judgment and remanded for an order reinstating the jury verdict. *Paterek v. Petersen & Ibold,* Geauga App. No. 2005–G–2624, 2006-Ohio-4179, 2006 WL 2337483. The appellate court held that the trial court had erred in making collectibility from Richardson an element of Irene's case:

{¶ 24} "Under Civ.R. 50(B) the trial court had no duty to examine the collectability of Richardson. * * * We accept that the jury limited its verdict of $382,000 to the personal injuries suffered by the Patereks, and did not enhance the award with any other damages that may have related to the malpractice committed by Evans and Petersen & Ibold, but this fact by itself did not enable the trial court to step in and reduce the jury verdict due to considerations of collectability of the verdict. Its duty was to examine whether the verdict was supported by 'substantial evidence,' not whether the verdict was collectible." Id. at ¶ 45.

{¶ 25} The cause is before this court upon the acceptance of a discretionary appeal.

## Law and Analysis

{¶ 26} In *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, this court set forth the elements of a claim for legal malpractice:

{¶ 27} "To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Id. at syllabus.

{¶ 28} The only dispute in this case concerns the measure of the damages that resulted from the appellants' negligence. When an attorney commits malpractice in a civil case, the lion's share of the damages derives from the value of the lost claim. Here, Irene Paterek sought more. She attempted to introduce testimony regarding the emotional injuries she and her husband suffered as a result of the appellants' malpractice, but the court refused to allow that testimony. Irene did not appeal that ruling, and the issue is not before us. Still, "[t]he vast majority of appellate decisions that have considered the issue have held that an attorney is not liable for emotional distress damages where the attorney's conduct has been merely negligent." Joseph J. Kelleher, An Attorney's Liability for the Negligent Infliction of Emotional Distress (1990), 58 Fordham L.Rev. 1309, 1319. This court has recognized that a plaintiff in a legal-malpractice case may seek other types of consequential damages, such as additional attorney fees incurred to correct the mistakes of the malpracticing attorney, *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 106, 538 N.E.2d 1058, but the jury below did not award any such damages. Thus, the focus of this case is the value of the lost cause of action.

{¶ 29} The dispute concerns whether the collectibility of any judgment that might have resulted from the lost claim is relevant to calculating the malpractice damages. This court has not specifically addressed this question, but the answer can be found within our holding in *Vahila* that there must be a causal connection between the conduct complained of and the resulting loss. 77 Ohio St.3d 421, 674 N.E.2d 1164, syllabus.

{¶ 30} The jury in this case arrived at a figure for damages that was not necessarily reflective of the value of the Patereks' claim against their lawyers; the jury's damage award reflects what the Patereks suffered through the negligence of Richardson. But the appellant attorneys in this case are not responsible for Richardson's negligent conduct; they are responsible for their own. This case is not about what Irene Paterek suffered on account of Richardson's bad driving, but what she suffered on account of the appellants' bad lawyering. The proper inquiry, then, is this: Had the appellants not been negligent, how much could Irene have received from a settlement or a judgment?

{¶ 31} A judgment amount that is shown to be collectible provides a realistic picture of what a malpractice claimant actually lost. To find collectibility of the lost judgment irrelevant would "go beyond the usual purpose of tort law to compensate for loss sustained and would give the client a windfall opportunity to fare better as a result of the lawyer's negligence than he would have fared if the lawyer had exercised reasonable care." David A. Barry, Legal Malpractice in Massachusetts: Recent Developments (1993), 78 Mass.L.Rev. 74, 81–82. The finest attorneys in the world cannot coax blood from a stone.

{¶ 32} "The prevailing rule is that the client's recovery is limited to the amount that would have been collectible." 4 Ronald E. Mallen and Jeffrey M. Smith, Legal Malpractice (2008), Section 31:17. Indeed, among other jurisdictions, the only dispute regarding collectibility concerns which party must prove it. The majority of jurisdictions have held that the burden of proving collectibility of the lost judgment lies with the plaintiff; in those jurisdictions, the plaintiff must prove the realistic value of a judgment against the underlying defendant as an element of his or her case. *Lawson v. Sigfrid* (1927), 83 Colo. 116, 117, 262 P. 1018; *Whiteaker v. State* (Iowa 1986), 382 N.W.2d 112, 115; *Jernigan v. Giard* (1986), 398 Mass. 721, 723, 500 N.E.2d 806; *Christy v. Saliterman* (1970), 288 Minn. 144, 150, 179 N.W.2d 288; *Eno v. Watkins* (1988), 229 Neb. 855, 429 N.W.2d 371, paragraph two of the syllabus; *Rorrer v. Cooke* (1985), 313 N.C. 338, 361, 329 S.E.2d 355; *Taylor Oil Co. v. Weisensee* (S.D.1983), 334 N.W.2d 27, 29.

{¶ 33} A minority of jurisdictions consider lack of collectibility to be an affirmative defense to be pleaded and proven by the defendant attorneys. *Carbone v. Tierney* (2004), 151 N.H. 521, 533, 864 A.2d 308; *Kituskie v. Corbman* (1998), 552 Pa. 275, 285, 714 A.2d 1027; *Power Constructors, Inc. v. Taylor & Hintze* (Alaska 1998), 960 P.2d 20, 31–32; *Jourdain v. Dineen* (Me.1987), 527 A.2d 1304, 1306. The court in *Kituskie* explains the minority view:

{¶ 34} "These courts have recognized that the plaintiff must prove a case within a case. These minority of courts, however, do not believe that it logically follows from the case within a case burden of proof that the plaintiff must also prove that the damages in the underlying case would have been collectible. Instead, these courts believe that the burden of proof in a legal malpractice action only requires the plaintiff to prove a loss of judgment on a valid claim. To require the plaintiff to also prove collectibility of damages would result in placing an unfair burden on the plaintiff where the plaintiff's legal malpractice action is often brought years after the initial accident causing his injuries solely because the defendant/lawyer failed to act in a timely and competent manner. Thus, the minority of courts believe that it is more logical and fair to treat collectibility as an affirmative defense which the defendant/attorney must plead and prove in order to avoid or mitigate the consequences of that attorney's negligent acts.

* * * Moreover, this minority has criticized the majority position because it ignores the possibility of settlement between the plaintiff and the underlying tortfeasor and also overlooks that the passage of time itself can be a militating factor either for or against collectibility of the underlying case." *Kituskie,* 552 Pa. at 284–285, 714 A.2d 1027.

{¶ 35} In *Smith v. Haden* (D.D.C.1994), 868 F.Supp. 1, 2, the court opined:

{¶ 36} "In a normal civil lawsuit, * * * a plaintiff must prove each required element to make out a case against the defendant in order to obtain a judgment. It is not necessary to demonstrate that plaintiff will successfully be able to execute on the judgment or that the judgment is collectible. Normally, enforcement of the judgment remains for another day. In a legal malpractice action alleging that an attorney failed to timely file suit, a plaintiff is required only to prove the loss of a judgment on a valid claim."

{¶ 37} We disagree with the minority view. We hold that collectibility is logically and inextricably linked to the legal-malpractice plaintiff's damages, for which the plaintiff bears the burden of proof. In proving what was lost, the plaintiff must show what would have been gained. The *Smith* court is correct that in other types of civil cases, the plaintiff is not required to prove collectibility. The malpractice plaintiff need not prove the collectibility of the attorney she is suing, but she must prove that the attorney she is suing has indeed injured her through neglecting to properly handle a lawsuit that would have generated recompense. And her injury is measured by what she actually would have collected.

{¶ 38} Moreover, we disagree with the *Kituskie* court that the majority position ignores the possibility of settlement between the plaintiff and the underlying tortfeasor and overlooks the mitigating nature of the passage of time. To the contrary, courts need not—and should not—overlook the possibility of settlement or the passage of time in determining damages suffered by a malpractice plaintiff. However, those factors should be a part of the plaintiff's case.

{¶ 39} Given our requirement that plaintiffs in legal-malpractice cases must prove a causal connection between the attorney's malpractice and their damages, we adopt the majority view that collectibility is an element of the plaintiff's case that must be proved by the plaintiff.

{¶ 40} Thus, it was up to the Irene Paterek to prove what she lost because of the appellants' negligence. She stipulated that she would have received nothing toward a judgment from the tortfeasor himself. The stipulation stated that Richardson did not have sufficient assets to satisfy any judgment beyond his $100,000 automobile liability coverage.

{¶ 41} The stipulation does not speak to the future ability of Richardson to pay off a judgment. Richardson was 17 years old at the time of the accident. The trial court opined that Irene Paterek might have found an expert to testify as to the value of a judgment against a person of Richardson's age and financial status. But she offered no such evidence. Thus, the record does not show that she could have collected more than $100,000 from sources related to Richardson.

{¶ 42} But in its consideration of the appellants' Civ.R. 50(B) motion, the trial court failed to take into account the value of the Patereks' UIM coverage. The parties had stipulated as to the existence of such coverage in the amount of $250,000, with $150,000 available to cover damages, if necessary, after set off of the $100,000 from the tortfeasor.

{¶ 43} In determining the collectibility of an unrealized judgment, the factfinder should consider the amount of the plaintiff's UIM policy. *Sparks v. Craft* (C.A.6, 1996), 75 F.3d 257. The amount payable under the policy springs from the judgment against the underlying tortfeasor and that tortfeasor's collectibility. As part of the pot available to a successful plaintiff in a case properly handled by an attorney, UIM coverage is evidence of collectibility of the underlying claim in an attorney-malpractice case.

{¶ 44} Appellants argue that Irene Paterek may still have a valid claim against One Beacon and that she should pursue that claim on her own. However, appellants' malpractice has tainted that claim. This court held in *Ferrando v. Auto–Owners Mut. Ins. Co.*, 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927, paragraph two of the syllabus, that "[w]hen an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a * * * subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights. An insured's breach of such a provision is presumed prejudicial to the insurer absent evidence to the contrary." Because One Beacon could not pursue Richardson for subrogation because of appellants' negligent handling of the Patereks' case, One Beacon is presumed not to be obligated to provide coverage to Irene Paterek. To recover against One Beacon, Irene would be forced to prove that *appellants'* negligence did not prejudice One Beacon. Not only is that an unfair burden to place on a victim—rather than the perpetrator—of malpractice, it would be a burden a rational victim would be unmotivated to accept. If the victim loses his case against the UIM carrier, the loss of that coverage becomes a part of malpractice damages. The better approach, then, is to include UIM coverage as part of the plaintiff's evidence of collectibility and leave the malpracticing attorney to prove in his own subrogation claim against the UIM carrier that his negligence did not prejudice the carrier.

{¶ 45} Here, the appellants stipulated to the existence of the UIM coverage and the amount that would be available to Irene Paterek from that policy. The trial court erred in failing to include the additional $150,000 available to Irene under the UIM policy in its calculation of damages. It should have entered judgment for her in the amount of $250,000.

{¶ 46} Accordingly, we reverse the judgment of the court of appeals, remand the cause to the trial court, and instruct the trial court to enter judgment in favor of the appellees in the amount of $250,000 plus applicable interest.

Judgment reversed<br>and cause remanded.

MOYER, C.J., and LUNDBERG STRATTON, BROGAN, and LANZINGER, JJ., concur.

O'CONNOR and CUPP, JJ., concur in part and dissent in part.

JAMES A. BROGAN, J., of the Second Appellate District, sitting for O'DONNELL, J.

---

**CUPP, J., concurring part and dissenting in part.**

{¶ 47} I concur in the majority's holding that in an attorney-malpractice case, proof of the collectibility of the judgment lost due to the malpractice is an element of the plaintiff's claim against the negligent attorney, and I join the majority's discussion of reasons for adopting that rule. I also agree that Irene Paterek did not prove that she could have collected more than $100,000 from sources related to Richardson, the tortfeasor.

{¶ 48} However, I disagree with the majority's decision that the value of the Patereks' underinsured-motorist coverage with their own insurer should be included in the judgment against the attorneys in the malpractice case. The Patereks dismissed their claim against their underinsured-motorist coverage carrier without prejudice shortly before trial. The court of appeals did not resolve the issue of whether the value of that coverage could properly be included in the Patereks' judgment against the attorneys in the malpractice case. In fact, the appellate court stated: "The issue of whether [Irene Paterek] could collect from the Patereks' own carrier on their UM/UIM coverage *was not submitted to the jury, and this court declines to weigh in as to whether such proceeds would ever be received. That issue is certainly not before us in this appeal.*" (Emphasis added.) *Paterek v. Petersen & Ibold,* Geauga App. No. 2005-G-2624, 2006-Ohio-4179, 2006 WL 2337483, ¶ 42. Under these circumstances, I would not reach this issue.

{¶ 49} Accordingly, I would reverse the judgment below and remand the case to the trial court with directions to reinstate its judgment notwithstanding the

verdict in favor of Irene Paterek in the amount of $100,000. Because the majority does not so limit its decision, I respectfully dissent.

O'CONNOR, J., concurs in the foregoing opinion.

---

Plevin & Gallucci, Edward Fitzgerald, and Leon M. Plevin; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers, for appellee.

Weston Hurd, L.L.P., Timothy D. Johnson, and Gregory E. O'Brien, for appellants.

Zavarello & Davis Co., L.P.A., and Rhonda Gail Davis, urging affirmance for amicus curiae Ohio Academy of Trial Lawyers.

Reminger & Reminger Co., L.P.A., Nicholas D. Sattullo, and Joseph W. Borchelt, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Gallagher Sharp, Alan M. Petrov, Timothy J. Fitzgerald, and Monica A. Sansalone, urging reversal for amicus curiae Minnesota Lawyers Mutual Insurance Company.

Janik, Dorman & Winter, L.L.P., Steven G. Janik, Jason Winter, and Daniel A. Scharf, urging reversal for amicus curiae American Guarantee and Liability Insurance Company.