Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 28, 2018

**2019 CO 8**

**No. 17SC312, *LeHouillier v. Gallegos*—Attorney Malpractice—Burden of Proof—Tort.**

In this attorney malpractice case founded on professional negligence, the supreme court is asked to decide who—the client or the attorney—bears the burden to prove that any judgment that could have been obtained against the underlying defendant would or would not have been collectible. The court holds that because the collectibility of the underlying judgment is essential to the causation and damages elements of a client's negligence claim against an attorney, the client-plaintiff bears the burden of proving that the lost judgment in the underlying case was collectible.

The record shows that the client-plaintiff in this case failed to prove that the underlying judgment would have been collectible. However, given the absence of a clear statement from this court regarding the plaintiff's burden to prove collectibility at the time of trial, and given that the issue was not raised in this case until after client-plaintiff had presented her case-in-chief, the court reverses the judgment of the court of appeals and remands the case for a new trial.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2019 CO 8**

**Supreme Court Case No. 17SC312**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA724

**Petitioners/Cross-Respondents:**

Patric J. LeHouillier and LeHouillier & Associates, P.C.,

v.

**Respondent/Cross-Petitioner:**

Della Gallegos.

**Judgment Reversed**
*en banc*
January 28, 2019

**Attorneys for Petitioners/Cross-Respondents:**
Hall & Evans, L.L.C.
Malcolm S. Mead
John E. Bolmer, II
Andrew P. Reitman
      *Denver, Colorado*

**Attorneys for Respondent/Cross-Petitioner:**
Anderson Hemmat, LLC
Chad P. Hemmat
Jason G. Alleman
Cameron O. Hunter
      *Greenwood Village, Colorado*

**Attorneys for Amicus Curiae Colorado Bar Association:**
Montgomery, Little & Soran, P.C.
Christopher B. Little
Michael R. McCormick
Christopher T. Carry

*Greenwood Village, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association:**
Ogborn Mihm, LLP
Michael T. Mihm
Thomas D. Neville
    *Denver, Colorado*

Saliman Law, LLC
Mark E. Saliman
    *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

2

¶1    In 2009, Della Gallegos had to undergo three cranial surgeries after her radiologist, Dr. Steven Hughes, failed to detect an obvious brain tumor on an MRI scan three years earlier. Had Dr. Hughes discovered the tumor in 2006, Gallegos could have treated it with cheaper, and less invasive, radiosurgery. The highly invasive cranial surgeries damaged Gallegos's vision, hearing, and memory.

¶2    Gallegos retained an attorney, Patric LeHouillier, to sue Dr. Hughes for medical malpractice. But LeHouillier later decided not to proceed with the suit, concluding it did not make economic sense. He and Gallegos disagree over whether he actually informed her of this decision. In any event, the statute of limitations lapsed on the claims Gallegos could have brought against Dr. Hughes.

¶3    Gallegos then brought this attorney malpractice case against LeHouillier and his firm, claiming that LeHouillier's negligence prevented her from successfully suing Dr. Hughes for medical malpractice. The question before us is who bears the burden to prove that any judgment that could have been obtained against Dr. Hughes would have been collectible? In other words, must a client who alleges her attorney was negligent prove that any lost judgment was collectible? Or must the attorney raise collectability as an affirmative defense and prove that the lost judgment was not collectible?

¶4    Because the collectibility of the underlying judgment is essential to the causation and damages elements of a client's negligence claim against an attorney, we hold that the client-plaintiff bears the burden of proving that the lost judgment in the underlying case was collectible. Here, the record reflects that Gallegos failed to present sufficient evidence of collectibility. However, given the absence of a clear statement from this court

3

regarding the plaintiff's burden to prove collectibility at the time of trial, and given that the issue was not raised in this case until after Gallegos had presented her case-in-chief, we reverse the judgment of the court of appeals and remand the case for a new trial.

## I. Facts and Procedural History

¶5 In 2006, Dr. Steven Hughes performed a magnetic image resonance (MRI) on Gallegos's brain. Dr. Hughes failed to detect a clearly visible meningioma (a type of tumor). Three years later, a different doctor noticed the tumor during another MRI. By this time, the tumor had grown substantially and was exerting pressure on Gallegos's optic nerves, brain stem, and other vital structures.

¶6 Had Dr. Hughes diagnosed the tumor in 2006, Gallegos could have undergone noninvasive radiosurgery to treat it. By 2009, however, noninvasive radiosurgery was no longer a viable option. Instead, surgeons had to perform three craniotomies, or surgical openings of the skull, to remove much of the tumor. Gallegos alleges that the surgeries cost her over $661,000, and resulted in permanent damage to her vision, hearing, and memory.

¶7 After her first craniotomy surgery in 2009, Gallegos retained an attorney, LeHouillier, to sue Dr. Hughes for medical malpractice. In early 2010, LeHouillier wrote a letter notifying Dr. Hughes that LeHouillier's law firm was investigating a medical malpractice case against him. The letter encouraged Dr. Hughes to "contact [his] professional liability insurer." Dr. Hughes never responded to the letter. Later that same year, LeHouillier decided not to proceed with the case because it did not make "dollar and cents sense."

4

¶8 LeHouillier claims that he met with Gallegos and informed her of his decision to end his representation of her, but he kept no written records memorializing the meeting or his decision. Gallegos contends that the alleged conversation never took place and that she was not aware that LeHouillier had dropped her case. The statute of limitations then lapsed on the medical malpractice claims that Gallegos could have brought against Dr. Hughes.

¶9 Gallegos then brought this legal malpractice action against LeHouillier and his firm, LeHouillier & Associates, P.C. (collectively, "LeHouillier"). Gallegos alleged that LeHouillier negligently failed to pursue her medical malpractice claim against Dr. Hughes. At trial, after Gallegos rested her case-in-chief, LeHouillier moved for a directed verdict, arguing that Gallegos bore the burden of proving the collectability of any judgment she could have obtained against Dr. Hughes, and that she had not carried this burden.

¶10 Gallegos's counsel initially disputed that Gallegos had the burden of proving collectibility, but nevertheless argued that she had met that burden. Counsel first pointed to LeHouillier's 2010 letter to Dr. Hughes urging him to contact his professional liability insurance. Counsel argued that, because Dr. Hughes never responded that he lacked insurance, it could be reasonably inferred from his silence that he did carry professional liability insurance. Gallegos's counsel also argued that Dr. Hughes must have carried insurance because section 13-64-301(1)(a.5)(I), C.R.S. (2018), requires all practicing doctors in Colorado to maintain professional liability insurance.

¶11 The trial court agreed with LeHouillier that Gallegos bore the burden of proving collectibility. But it ruled that Gallegos had provided sufficient evidence to permit the jury to decide whether the judgment against Dr. Hughes was collectible. The letter to Dr. Hughes was admitted into evidence, but the jury was not instructed or otherwise informed about the requirements of section 13-64-301(1)(a.5)(I).

¶12 The jury ultimately found that Dr. Hughes had committed medical malpractice by failing to diagnose Gallegos's brain tumor in 2006. It also found that LeHouillier and his firm had breached their professional duty of care by not pursuing the case against Dr. Hughes. Finally, the jury found that Gallegos suffered over $1.6 million in present and future damages.

¶13 After trial, LeHouillier moved for judgment notwithstanding the verdict, emphasizing that "without any evidence on [collectibility], the elements of causation and damages were left to speculation." The trial court denied the motion, again concluding that Gallegos had provided sufficient evidence for the jury to decide whether the judgment against Dr. Hughes was collectible.

¶14 In a 2-1 decision, the court of appeals reversed and remanded for a new trial. *Gallegos v. LeHouillier*, 2017 COA 35, ___ P.3d ___. The division unanimously agreed that there was no evidence at trial to show that the underlying judgment was collectible. *Id.* at ¶¶ 3, 71 (Webb, J., concurring in part and dissenting in part). Correctly noting that this court had never expressly addressed which party carries the burden of proving collectibility in an attorney malpractice case, the division majority held that the burden

6

should not fall on the client-plaintiff. Instead, it concluded that collectibility should be an affirmative defense for the attorney-defendant to raise and prove. *Id.* at ¶¶ 66, 68.

¶15 The division majority's holding rested on several policy rationales. *Id.* at ¶¶ 58-64. Chief among them was the majority's view that requiring client-plaintiffs to prove the collectibility of an underlying judgment allocates the burden of proof unfairly because any need to prove collectibility arises only as "the result of an attorney's established malpractice." *Id.* at ¶ 57 (quoting *Schmidt v. Coogan*, 335 P.3d 424, 428 (Wash. 2014)). The majority also reasoned that the attorney-defendant is better positioned to prove uncollectibility because the attorney should have investigated the solvency of the defendant in the underlying case at the beginning of the client's case.[1] *Id.* at ¶ 58. Accordingly, it remanded the case for a new trial, requiring LeHouillier to prove that the judgment against Dr. Hughes was not collectible. *Id.* at ¶ 6.

¶16 In his dissent, Judge Webb disagreed with the division majority that collectibility should be relegated to an affirmative defense. First, he reasoned that the issue of

---

[1] The division majority also observed that to require a client-plaintiff to introduce evidence of collectibility would be at odds with evidence rules and case law generally excluding evidence of insurance coverage; that the common delay between the original injury and a legal malpractice case could harm the client's opportunity to gather evidence about collectibility; that because the underlying defendant's insolvency permits the attorney to mitigate or to avoid the consequences of his negligent act, the attorney should bear the burden to prove it; that placing the burden on the attorney does not eliminate the effect of insolvency because if the attorney proves that a judgment is not collectible, damages could be mitigated or eliminated; and that plaintiffs in the vast majority of negligence cases do not have to prove that any judgment they might win will be collectible. *Gallegos v. LeHouillier*, 2017 COA 35, ¶¶ 59–63, ___ P.3d ___.

collectibility is inextricably bound up with the causation and damages elements of a negligence claim. *Id.* at ¶¶ 75–77. Thus, he concluded, requiring an attorney-defendant to prove uncollectibility would "erase[] both damages and causation from the plaintiff's side of the ledger and . . . write[] them on the defendant's side." *Id.* at ¶ 78. Second, Judge Webb reasoned that placing the burden on the attorney-defendant to prove uncollectibility would effectively require the attorney to prove the insolvency of the underlying defendant. Noting that "insolvency is more than the reciprocal of collectibility[,]" Judge Webb reasoned that this burden would require the attorney to recreate all of the underlying defendant's assets and liabilities—a much more onerous task than proving collectibility. *Id.* at ¶¶ 101–02.

¶17 We granted the parties' cross-petitions for writs of certiorari[2] to determine which party should bear the burden to prove that the underlying judgment would or would not have been collectible.

---

[2] We granted certiorari to review the following issues:

1. Whether a plaintiff bringing a legal malpractice claim for damages predicated on a lost judgment in an underlying matter must establish that the judgment was collectible.

2. Whether respondent/cross-petitioner, Ms. Della Gallegos, failed to prove that the underlying judgment was collectible.

3. Whether the trial court's judgment should be affirmed because petitioner, Mr. LeHouillier, did not attempt to prove that the underlying judgment was not collectible.

8

## II. Analysis

¶18   Determining which party bears the burden of proof is a question of law, which we review de novo. *Allen v. Steele*, 252 P.3d 476, 481 (Colo. 2011).

¶19   A legal malpractice claim founded on professional negligence asserts that an attorney breached his or her professional duty of care in a way that proximately injured a client. *See Hopp & Flesch, LLC v. Backstreet*, 123 P.3d 1176, 1183 (Colo. 2005). In cases such as this one, the client claims that her attorney's malpractice prevented her from prevailing in a lawsuit. For clarity, we refer to that separate lawsuit as the "underlying case." To prevail on this type of attorney malpractice claim, the client must prove that but for the attorney's negligence, she would have won a favorable judgment against the underlying defendant. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo. 1999). This requirement is often referred to as proving the "case within a case." *Id.*

¶20   Over ninety years ago, in *Lawson v. Sigfrid*, 262 P. 1018 (Colo. 1927), we recognized that if an attorney malpractice plaintiff could not have collected a judgment from the defendant in the underlying case because that defendant was insolvent, then the plaintiff was not entitled to damages in the attorney malpractice case. *Id.* at 1019. We reasoned that if the plaintiff could not have collected on the underlying judgment, she could not be said to have suffered any loss from the attorney's breach of duty. *Id.* Thus, it has long been clear that proving the case within a case in an attorney malpractice suit includes resolving the question of whether the judgment in the underlying case would have been collectible.

9

¶21     What our cases have not expressly clarified is which party—the client-plaintiff or the attorney-defendant—bears the burden of establishing that the judgment in the underlying suit would or would not have been collectible. That is, must the client prove that any lost judgment was collectible? Or must the attorney prove uncollectibility as an affirmative defense?

¶22     Because the collectibility of the underlying judgment is essential to the causation and damages elements of a client's professional negligence claim against her attorney, we now expressly hold that the client-plaintiff bears the burden to prove that the underlying judgment was collectible.

¶23     We first examine *Lawson* and conclude that it did not squarely address the issue of who bears the burden of proving that the judgment in the underlying suit would have been collectible. We then explain why placing the burden of proving collectibility on the client-plaintiff aligns with tort law by requiring her to prove all prima facie elements—duty, breach, causation, and damages—of her professional negligence malpractice claim, and why this requirement is not unfair or unduly burdensome. Finally, we explain why requiring the attorney-defendant to raise and prove uncollectibility as an affirmative defense is not logically sound.

## A. *Lawson v. Sigfrid*

¶24     Several cases and legal commentators have suggested that our 1927 decision in *Lawson* established that in a legal malpractice suit, the client-plaintiff bears the burden of establishing that any judgment in the underlying case would have been collectible. Indeed, at least five state appellate courts have cited *Lawson* for the proposition that

10

Colorado allocates the burden of proving collectibility to the client-plaintiff. *See Paterek v. Petersen & Ibold*, 890 N.E.2d 316, 321 (Ohio 2008); *Kituskie v. Corbman*, 714 A.2d 1027, 1031 n.6 (Pa. 1998); *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 160 (Iowa 1984); *Taylor Oil Co. v. Weisensee*, 334 N.W.2d 27, 29 n.2 (S.D. 1983); *McDow v. Dixon*, 226 S.E.2d 145, 147 (Ga. App. 1976).[3]  Numerous legal treatises and other authorities do the same.

---

[3] It appears that in 1976, the Georgia Court of Appeals included *Lawson* in a string citation for the proposition that "[the] requirement that solvency be shown is both longstanding and widespread."  *McDow v. Dixon*, 226 S.E.2d 145, 147 (Ga. Ct. App. 1976). (*McDow* explained that solvency in this context "is not intended to imply a bankruptcy-type standard, but rather is intended to illustrate the original defendant's ability to pay a judgment, had one been rendered against him." *Id.*)  The preceding sentence in *McDow*, at the end of the previous paragraph, stated: "A client suing his attorney for malpractice not only must prove that his claim was valid and would have resulted in a judgment in his favor, but also that said judgment would have been collectible in some amount . . . ." *Id.*  These consecutive sentences probably led courts and commentators who read them to think that *Lawson* held that the client bears the burden of proving collectability.  The South Dakota Supreme Court included *Lawson* in a footnote after quoting *McDow*.  *See Taylor Oil Co. v. Weisensee*, 334 N.W.2d 27, 29 n.2 (S.D. 1983).  The Iowa Supreme Court offered it, along with *McDow*, as support for the proposition that assigning to the plaintiff the burden of proving collectibility is "the rule which is applied generally." *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 160 (Iowa 1984).  Citing *Lawson* and *McDow*, a superior court in Pennsylvania included Colorado and Georgia in a list of thirteen states that "place the burden upon the plaintiff (in a malpractice action against an attorney) to prove collectibility of the underlying judgment." *Kituskie v. Corbman*, 682 A.2d 378, 381 (Pa. Super. Ct. 1996), *aff'd and remanded*, 714 A.2d 1027.  The Pennsylvania Supreme Court then cited *Lawson* and *McDow* for the same proposition in a footnote when addressing an appeal from the superior court's decision. *Kituskie*, 714 A.2d at 1031 n.6.  And, although *Paterek v. Petersen & Ibold*, 890 N.E.2d 316, 321 (Ohio 2008), did not cite *McDow,* it cited *Taylor Oil Co.*  After this, commentators included *Lawson* among those cases placing the burden of proving collectibility on the plaintiff without any analysis of the case beyond a simple citation. *See, e.g.*, 4 Ronald E. Mallen, Legal Malpractice §§ 33.29 n.4, 33.32 n.5 (2018 ed.); Elisa Recht Marlin, *Recent Decision, Kituskie v. Corbman, 714 A.2d 1027 (Pa. 1998)*, 37 Duq. L. Rev. 521, 530, 530 n.77 (1999).

*See*, *e.g.*, 4 Ronald E. Mallen, Legal Malpractice §§ 33.29 n.4, 33.32 n.5 (2018 ed.); Elisa Recht Marlin, *Recent Decision, Kituskie v. Corbman, 714 A.2d 1027 (Pa. 1998)*, 37 Duq. L. Rev. 521, 530, 530 n.77 (1999).

¶25 As the court of appeals correctly recognized, these sources are misguided. *LeHouillier*, ¶¶ 25–38. In *Lawson*, we merely recognized that if a plaintiff could not have collected from the defendant in the underlying matter because the defendant was insolvent, then the plaintiff was not entitled to damages in the attorney malpractice case. *Lawson*, 262 P. at 1019. But we did not actually allocate the burden of proving collectibility to the plaintiff. We agree with the court of appeals that a close reading of *Lawson* shows that we never reached the issue of who bears the burden of proving the collectibility of any judgment in the underlying suit. *LeHouillier*, ¶¶ 35–37.

¶26 In *Lawson*, the plaintiff hired a lawyer to sue his debtor, Bessie Kennedy, for an unpaid debt. *Lawson*, 262 P. at 1018. Four years later, the plaintiff discovered that the trial court had dismissed the case for failure to prosecute. *Id.* The plaintiff then sued the lawyer for "neglect of professional duty." *Id.*

¶27 The trial court granted the lawyer's motion for a directed verdict. *Id.* The court reasoned that the plaintiff had to prove that (1) the lawyer had been negligent, (2) the plaintiff had "a good cause of action" against Kennedy, and (3) if the plaintiff had obtained a judgment against Kennedy, the judgment "could have been executed." *Id.* However, the court found that the plaintiff's proof that the judgment could have been executed "had failed." *Id.*

12

¶28 On appeal to this court, the plaintiff asserted that the attorney-defendant bore the burden to prove that Kennedy had been insolvent, and that the plaintiff was therefore entitled to recover his costs and expenses from the attorney. *Id.* We first noted that the plaintiff's evidence had shown that Kennedy had been insolvent and that Kennedy's insolvent status was "presumed to have continued until the contrary appear[ed]." *Id.* Because Kennedy was insolvent, we concluded that the plaintiff could not have "lost" any of his costs or expenses because of the attorney's negligence. *Id.* at 1019. Having determined that the plaintiff's own evidence established that the underlying defendant was insolvent, we did not have to reach the issue of whether the trial court had properly allocated the burden of proof.

¶29 *Lawson* therefore established that the question of collectibility matters in a legal malpractice case: Because Kennedy was insolvent, the attorney's negligence did not cause the plaintiff to lose his costs and expenses. *Id.* But *Lawson* did not expressly hold that a plaintiff in a legal malpractice suit bears the burden of proving that any judgment in the underlying case would have been collectible. In other words, *Lawson* did not allocate the burden of proving collectibility at all.[4]

---

[4] Two legal commentators agree with this analysis of *Lawson*. *See* Michael P. Cross & Nicole M. Quintana, *Your Place or Mine?: The Burden of Proving Collectibility of an Underlying Judgment in a Legal Malpractice Action*, 91 Denv. U. L. Rev. Online 53, 54 (2014) (explaining that *Lawson* "established the relevancy of the question of whether an underlying judgment is collectible in a legal malpractice action," but that it did not allocate the burden of proof on this point).

¶30     This court has never cited *Lawson* in a subsequent decision, and our later cases have not clearly answered who bears the burden of proving collectibility. For the reasons below, we now expressly hold that the client-plaintiff must prove collectibility of the underlying judgment as part of her prima facie case.

## B. Requiring Plaintiff to Prove Collectibility Aligns with Tort Theory

¶31     Where, as here, a legal malpractice claim is founded on professional negligence, the plaintiff must prove duty, breach, causation, and damages (as in every negligence case). *See, e.g., Hopp & Flesch, LLC,* 123 P.3d at 1183; *Lombard v. Colo. Outdoor Educ. Ctr., Inc.,* 266 P.3d 412, 416 (Colo. App. 2011).

¶32     As Judge Webb noted in his dissent, the collectibility of the underlying judgment implicates both the causation and damages elements of a negligence claim. *See Schmidt,* 335 P.3d at 428. In order to prove that the attorney's negligence caused the client harm, the client-plaintiff must show that "the claim underlying the malpractice action would have been successful 'but for' the attorney's negligence." *Gibbons v. Ludlow,* 2013 CO 49, ¶ 16, 304 P.3d 239, 245 (quoting *Bebo Const. Co.,* 990 P.2d at 83); *see also* Restatement (Second) of Torts § 431 cmt. a (Am. Law Inst. 1965) (stating that a necessary condition of legal causation is that the "harm would not have occurred had the actor not been negligent").

¶33     But "[i]f the underlying judgment was uncollectible, for example, due to insufficient assets or bankruptcy, the lost value of the judgment is not the proximate result of an attorney's negligence." *Schmidt,* 335 P.3d at 428; *see also Klump v. Duffus,* 71 F.3d 1368, 1374 (7th Cir. 1995) ("To predicate an award of damages upon both the

14

requirement that a judgment would have been recovered and that it would have been collectible . . . requires a showing of causation . . . that is conceptually no different from that required in negligence cases generally." (quoting Joseph H. Koffler, *Legal Malpractice Damages in a Trial Within a Trial — A Critical Analysis of Unique Concepts: Areas of Unconscionability*, 73 Marq. L. Rev. 40, 52 (1989))). Proving collectibility, therefore, necessarily follows from the rule that plaintiffs must prove causation.

¶34    Relatedly, in a legal malpractice claim alleging that an attorney mishandled an underlying case, the measure of a client-plaintiff's damages is the amount of the underlying judgment that could have been collected. A plaintiff must prove "by a preponderance of the evidence that [she] has in fact suffered damage." *W. Cities Broadcasting, Inc., v. Schueller*, 849 P.2d 44, 48 (Colo. 1993). Such damages must be actual, not "mere speculation or conjecture." *Id.* (quoting *Tull v. Gundersons, Inc.*, 709 P.2d 940, 943 (Colo. 1985)). If the lost judgment was uncollectible, then the client-plaintiff has not incurred any legally cognizable damages. The Ohio Supreme Court summed up the reasoning for this approach in *Paterek*: "[C]ollectibility is logically and inextricably linked to the legal-malpractice plaintiff's damages, for which the plaintiff bears the burden of proof." *Paterek*, 890 N.E.2d at 321. For the plaintiff to show "what was lost, the plaintiff must show what would have been gained." *Id.*

¶35    Indeed, a majority of courts that have addressed this issue have recognized that placing the burden to prove collectibility on the client-plaintiff better aligns with the tort law paradigm by requiring a plaintiff to prove all elements of a negligence claim. *See*, *e.g.*, *Schmidt*, 335 P.3d at 428 ("The traditional approach rests primarily on the theory that

15

it is consistent with tort law: plaintiffs may recover only the amount that will make them whole (and not a windfall), and the plaintiff must prove both proximate cause and injury.").

### C. Requiring Plaintiff to Prove Collectibility Is Not Unfair or Unduly Onerous

¶36    Requiring a client-plaintiff to establish the collectibility of any underlying judgment is not unfair or unduly onerous.

¶37    We acknowledge that the need to prove uncollectibility arises only as "the result of an attorney's established malpractice." *Schmidt*, 335 P.3d at 428. And as the court of appeals majority noted, "a plaintiff in a legal malpractice case already has the burden of proving negligence twice" by showing both the lawyer and the underlying defendant were negligent. *LeHouillier*, ¶ 57 (citing *Kituskie*, 682 A.2d at 382). But a plaintiff is always required to prove causation and damages to prevail in a negligence case. The plaintiff's burden in an attorney malpractice case founded on professional negligence is no different.

¶38    Moreover, this burden is not especially onerous. Indeed, where, as here, the underlying defendant is a professional, the best evidence of collectibility would be proof of insurance coverage. And if the attorney had undertaken some inquiry into the defendant's insurance coverage, that information likely would be in the attorney's files and subject to the client-plaintiff's discovery.

¶39    We disagree with the court of appeals that "requir[ing] the client to introduce evidence of collectibility would often be at odds with evidence rules and case law

16

generally excluding evidence of insurance coverage." *Id.* at ¶ 59. Evidence concerning a defendant's insurance or lack thereof is usually precluded because such evidence might improperly influence the jury's determination of liability. *See* CRE 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance . . . when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness."); *Johns v. Shinall*, 86 P.2d 605, 608 (Colo. 1939). The policy concerns underlying CRE 411 do not apply in a legal malpractice case because the coverage question pertains not to the attorney, but to the defendant in the underlying action. So, the risk that a jury would conflate coverage of the underlying defendant and liability of the attorney is low. Moreover, to avoid jury confusion, courts could bifurcate the trial on the collectibility issue. *See Hoppe v. Ranzini*, 385 A.2d 913, 919 (N.J. Super. Ct. App. Div. 1978).

¶40    Alternatively, a client-plaintiff could depose the underlying defendant to explore his or her net worth. In fact, a plaintiff could also satisfactorily prove collectibility by showing sufficient unencumbered assets—such as titled assets or real estate—information available through public records.

**D. Proving Uncollectibility as an Affirmative Defense Is Not Logically Sound**

¶41    We disagree with the division majority below that an attorney-defendant must raise the issue of collectibility as an affirmative defense, which would mean that he or she also bears the burden of proving that the judgment was not collectible. *LeHouillier*, ¶ 3. We recognize that a growing minority of states treat collectibility as an affirmative

17

defense that an attorney-defendant must raise and prove. *See* Cross & Quintana, 91 Denv. U. L. Rev. Online at 57 n.27. But in our view, casting collectibility as an affirmative defense is not logically sound.

¶42 Treating collectibility as an affirmative defense to be raised and proved by the attorney disregards the tort paradigm by ignoring the link between the causation and damages elements that a malpractice plaintiff must prove as part of her prima facie case. Generally, an affirmative defense relies on legal rules or collateral facts to nullify what would otherwise constitute liability. *See Affirmative defense*, *Black's Law Dictionary* (10th ed. 2014) ("A defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true."). For example, a statute of limitations defense bars recovery on an otherwise meritorious negligence claim brought more than two years after an action accrues. *See*, *e.g.*, § 13-80-102(1), C.R.S. (2018). An affirmative defense, however, does not purport to negate an essential element of a plaintiff's case. But requiring an attorney-defendant to prove that the client's hoped-for damages in an underlying suit were uncollectible effectively forces the attorney to disprove two essential elements of the client-plaintiff's case: causation and damages. Such an approach conflicts with the basic paradigm of tort law.

¶43 Indeed, the Colorado Rules of Civil Procedure buttress the argument that affirmative defenses do not negate an essential element of a plaintiff's claim. For example, C.R.C.P. 8(c) (with limited exceptions) requires a defendant to plead an affirmative defense in a responsive pleading, not in a pre-answer motion. *See also* C.R.C.P. 12(b). If the trial court decides that the affirmative defense defeats the plaintiff's

18

action, the result is usually summary judgment under C.R.C.P. 56, not dismissal for failure to state a claim under C.R.C.P. 12(b)(5). *See Bristol Bar Prod., LLC v. Lampack*, 2013 CO 60, ¶ 45, 312 P.3d 1155, 1164. Morevoer, C.R.C.P. 8(c) lists as an affirmative defense "[a]ny mitigating circumstances to *reduce the amount of damage.*" (emphasis added). As Judge Webb noted in his dissent, the very language of Rule 8(c) presumes that the plaintiff has established "at least some damages" from the outset. *LeHouillier*, ¶ 79. In fact, if the plaintiff fails to establish any damages, the ordinary recourse for a defendant is a motion for a directed verdict. *See* C.R.C.P. 50.

¶44 The division majority's approach also allows plaintiffs to reap a potential windfall. A bedrock goal of tort law is to "make the plaintiff whole." *See Stamp v. Vail Corp.*, 172 P.3d 437, 448 (Colo. 2007) (explaining the function of compensatory damages). Tort law thus disfavors "windfall" damage awards that make the plaintiff better off than she would have been had her legal rights not been violated. *See Dep't of Health v. Donahue*, 690 P.2d 243, 250 (Colo. 1984). Requiring a client-plaintiff to establish collectibility ensures that the client will not reap a windfall by recovering more from the attorney-defendant than the client could ever have recovered from the hypothetical defendant in the underlying case. *See, e.g., Klump* 71 F.3d at 1374 ("Hypothetical damages above the amount that [the plaintiff] could genuinely have collected from [the defendant] are not a legitimate portion of her 'actual injury;' awarding her those damages would result in a windfall."); *Fernandez v. Barrs*, 641 So. 2d 1371, 1376 (Fla. Dist. Ct. App. 1994) (noting that the traditional rule "prevents a windfall to the client by preventing him from recovering more from the attorney than he could have actually obtained from the tortfeasor in the

underlying action"), *disapproved of on other grounds by Chandris, S.A. v. Yanakakis*, 668 So. 2d 180, 185 (Fla. 1995). By contrast, treating collectibility as an affirmative defense risks allowing the client-plaintiff to recover more than her "actual injury."

¶45 Finally, placing the burden with the attorney-defendant to prove uncollectibility forces the attorney to "prov[e] a negative," which is a much more onerous burden than requiring the client-plaintiff to prove collectibility. *See, e.g., Rooks v. Robb,* 871 N.W.2d 468, 471 (N.D. 2015). The attorney-defendant must first negate the underlying defendant's insurance coverage, a task arguably no more difficult than proving it. But then, to prove insolvency, the attorney must reconstruct the underlying defendant's entire financial position, accounting for all of his or her assets and liabilities. This presents a much more onerous burden.

¶46 For all of these reasons, we conclude that treating collectibility as an affirmative defense that the attorney-defendant must raise and prove does not make logical sense.

## III. Application

¶47 Here, our review of the record shows that Gallegos failed to prove that the underlying judgment against Dr. Hughes would have been collectible.

¶48 Gallegos introduced the 2010 letter that LeHouillier wrote to Dr. Hughes recommending that the doctor put "[his] professional liability carrier on notice." Gallegos argues that because Dr. Hughes never responded to the letter that he lacked insurance, it can be reasonably inferred that he must have had insurance, thus evincing the collectibility of the underlying judgment.

20

¶49 We disagree. Although Dr. Hughes did not inform LeHouillier that he did not have liability coverage, he also did not inform LeHouillier that he did have liability coverage. Dr. Hughes simply did not respond at all.

¶50 Gallegos also argues that Dr. Hughes must have had insurance because section 13-64-301(1)(a.5)(I) requires all practicing Colorado doctors to maintain professional liability insurance. She therefore claims that the underlying judgment would have been collectible. *LeHouillier,* ¶ 20. But despite the statute's mandate, there is no evidence that Dr. Hughes actually complied. Moreover, the jury was not instructed about the statute's requirements. *Id.* at ¶¶ 21–22. In sum, the jury had no evidentiary basis from which to infer that Dr. Hughes carried professional liability insurance or that any judgment against him would have been collectible.

¶51 However, given the absence of a clear statement from this court regarding the plaintiff's burden to prove collectibility at the time of trial, and given that the issue was not raised in this case until after Gallegos had presented her case-in-chief, we reverse the judgment of the court of appeals and remand the case for a new trial.

## IV. Conclusion

¶52 We hold that the court of appeals erred in concluding that in an attorney malpractice case, the attorney-defendant should bear the burden of proving that any underlying judgment would have not been collectible. Instead, we hold that in an attorney malpractice case founded on professional negligence, the client-plaintiff bears the burden of proving that the lost judgment in the underlying case was collectible.

¶53 We reverse the judgment of the court of appeals and remand for a new trial.