The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 20, 2020

## 2020COA31

**No. 18CA1592, *Kroesen v. Shenandoah Homeowners Ass'n* — Real Property — Easements Appurtenant — Common Interest Communities — Colorado Common Interest Ownership Act**

On a matter of first impression, a division of the court of appeals analyzes the amount of specificity necessary in a recorded document to establish an enforceable easement within a common interest community. The division specifically evaluates whether the developer of two subdivisions created a valid easement for property owners of one subdivision to use certain roads within the other subdivision when the plats for the subdivision burdened by the easement did not expressly refer to the easement. Because the Colorado Common Interest Ownership Act contains specific statutory requirements for creating an easement and supplements traditional common law principles, the division addresses whether

the developer complied with the requirements of the Act and the common law. The division holds that the developer complied with the Act and the common law and, thus, created an enforceable easement.

The division additionally analyzes whether a party is entitled to recover lost profits on a claim for intentional interference with a real estate sales contract. Because the subject property had not become unmerchantable, the division holds that the party was not entitled to recover lost profit damages and affirms the district court's calculation of damages.

COLORADO COURT OF APPEALS                                    **2020COA31**

Court of Appeals No. 18CA1592
La Plata County District Court No. 17CV30018
Honorable Todd P. Norvell, Judge

Ronald J. Kroesen and Patricia L. Kroesen,

Plaintiffs-Appellees and Cross-Appellants,

v.

Shenandoah Homeowners Association, Inc., a Colorado nonprofit corporation, and Ronald Burris, in his official capacity as Director of the Shenandoah Homeowners Association, Inc.,

Defendants-Appellants and Cross-Appellees.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Fox and Berger, JJ., concur

Announced February 20, 2020

Goldman, Nicholson & Mack, P.C., Lindsey K.S. Nicholson, Josh W. Mack, Durango, Colorado, for Plaintiffs-Appellees and Cross-Appellants

Campbell, Wagner, Frazier & Dvorchak, LLC, Colin C. Campbell, Greenwood Village, Colorado, for Defendants-Appellants and Cross-Appellees

¶ 1    Plaintiffs, Ronald J. and Patricia L. Kroesen, owners of land in the Shenandoah Highlands Subdivision (Highlands Subdivision) in La Plata County, seek to access their property over two roads in the adjoining Shenandoah Subdivision.  The Kroesens argue they have an easement over the roads based on language in plats that the developer of both subdivisions recorded as amendments to each subdivision's declarations.

¶ 2    Defendants, Shenandoah Homeowners Association, Inc. and Ronald Burris, the president of the Association (jointly, Shenandoah Association), respond that the developer failed to comply with the statutory requirements for creating an easement in a common interest community.  Shenandoah Association specifically argues that the developer failed to provide future owners of lots in Shenandoah Subdivision the required record notice of the easement.

¶ 3    The Kroesens also assert an intentional interference with contract claim against Shenandoah Association.  They allege that Shenandoah Association's refusal to recognize the easement caused the Kroesens to lose a contract to sell their property to a third

party. The Kroesens seek lost profits and other damages on that claim.

¶ 4 Following a bench trial, the district court entered judgment in favor of the Kroesens on their claims for declaratory judgment and intentional interference with contract. The court found that the developer complied with the requirements for creating an easement and that Shenandoah Association intentionally interfered with the Kroesens' contract to sell their property. It awarded the Kroesens damages for intentional interference with contract, including the cost of holding and maintaining the property from the date of the interference until two years following the judgment. But the court did not award the Kroesens lost profits.

¶ 5 Shenandoah Association appeals the judgment entered in favor of the Kroesens. The Kroesens appeal the district court's denial of their request for lost profits.

¶ 6 The appeals raise an issue of first impression in this state — the amount of specificity necessary in a recorded document to establish an enforceable easement within a common interest community.

¶ 7 We affirm.

2

## I.     The Two Subdivisions

¶ 8     In 1984, Shenandoah Limited (the developer) began developing a 993-acre parcel (original property) in La Plata County. As relevant to this appeal, the developer divided the original property into two subdivisions — Shenandoah Subdivision, created in 1989, and Highlands Subdivision, created in 1994 — by recording declarations for each. (A "declaration" is a "recorded instrument[] . . . that create[s] a common interest community . . . including . . . plats and maps." § 38-33.3-103(13), C.R.S. 2019. A "plat" is the "part of a declaration that . . . depicts all or any portion of a common interest community in two dimensions . . . ." § 38-33.3-103(22.5).) The developer established a homeowner's association for each subdivision.

¶ 9     The developer also recorded plats that depicted the two roads at issue, known as Colonial Drive (or Colonial Road) and Blue Ridge Road. Portions of the roads follow the boundary between the two subdivisions. The plats also created an easement (the Subject Easement) that arguably allowed the owners of lots in Highlands Subdivision to access their properties over the roads.

¶ 10    The pre-1994 plats amending the declaration for Shenandoah Subdivision referenced the Subject Easement, albeit in general terms, as they pre-dated the creation of Highlands Subdivision. Those plats described the Subject Easement as:

- an access road easement "dedicated to [the developer and] the Shenandoah Homeowners Association";

- consisting of "General Common Elements . . . for the use and benefit of [the developer], the owners of the lots within [Shenandoah Subdivision and] adjacent subdivisions";

- "for the use of [the developer]" and the owners of each lot created by the plat for the original property; and

- dedicated to the developer and "the present and future owners of [Shenandoah Subdivision]."

None of the pre-1994 plats described "adjacent subdivisions" with greater specificity.

¶ 11    After the developer created Highlands Subdivision, the developer and the then owner of the Kroesens' lot (the former owner) each independently recorded a plat relevant to our analysis. The developer recorded a plat entitled "Shenandoah Highlands

4

Subdivision No. 2 Project 95-88" (Highlands Plat) that created new tracts, including Tracts A and B, within Highlands Subdivision; asserted that the developer owned Colonial Drive and Blue Ridge Road; and expressly stated that "[n]ormal access for Tract A will be via Blue Ridge and Colonial Drive to County Road 141."

¶ 12    The former owner recorded a plat consolidating Tracts A and B into Tract AB (Tract AB Plat).  Residential construction on Tract AB was limited to the portion that was formerly Tract A.

¶ 13    According to the Highlands and Tract AB Plats, not only is Tract AB adjacent to Shenandoah Subdivision, but it abuts Blue Ridge Road:

Blue Ridge Road merges into Colonial Drive north of Tract AB.

¶ 14    Before the former owner consolidated Tracts A and B, the Board of Directors of Shenandoah Homeowners Association approved an easement over Blue Ridge Road to benefit Tract A. (The record does not specify whether the Board approved a similar easement over Colonial Drive.)  Although the Board's action appears in its meeting minutes, no recorded document reflects the Board's approval of the Subject Easement.  The members of Shenandoah Homeowners Association did not ratify the Board's approval of the Subject Easement or otherwise authorize an easement to benefit Tract AB.

¶ 15    In 1999, the Kroesens purchased Tract AB from the former owner for $160,000.  In 2015, the Kroesens signed a contract to sell Tract AB for $188,500.  Before the closing on the sale, however, Burris, in his capacity as president of the Board of Directors of Shenandoah Homeowners Association, told the Kroesens' real estate agent that the owners of Tract AB had no right to use either road.

¶ 16    The prospective purchaser refused to close on the purchase of the Kroesens' property after learning that the owners of Tract AB

may not have an easement over the roads. The Kroesens claim that, after the sale fell through, they were unable to find a purchaser willing to buy Tract AB without access to the roads.

## II. Procedural History

¶ 17 The Kroesens sued to obtain, among other relief, (1) a declaratory judgment that the owners of Tract AB have an easement over the roads; (2) a permanent injunction enjoining Shenandoah Association from interfering with their access to Tract AB over the roads; (3) an award of their expenses associated with the failed sale of their property and lost profits for Shenandoah Association's intentional interference with their purchase contract; and (4) damages for slander of title arising from Shenandoah Association's assertion, through Burris, that the owners of Tract AB did not have an easement over the roads.

¶ 18 The district court granted summary judgment to the Kroesens on their declaratory judgment claim. (The parties expressly agreed there were no disputed issues of material fact.) In a well-reasoned order, the court ruled that the plats for Shenandoah Subdivision were sufficient to establish an easement over the roads benefitting

8

Tract AB. However, the court's order did not expressly resolve whether the Kroesens were entitled to a permanent injunction.

¶ 19 The court resolved the Kroesens' claims for intentional interference with contract and slander of title following a bench trial. The court awarded the Kroesens damages on the intentional interference with contract claim to compensate them for their inability to sell the property. The damages took the form of approximately five years of maintenance expenses. The court declined to award lost profits, however, because it concluded that the Kroesens would eventually be able to sell the property at or above the $188,500 purchase price specified in the terminated contract.

¶ 20 The court resolved the slander of title claim in favor of Shenandoah Association because the Kroesens had not proved the element of malice.

¶ 21 Following the bench trial, Shenandoah Association appealed the district court's declaratory judgment holding, and the Kroesens cross-appealed the court's denial of their request for lost profits.

¶ 22 After discovering that the district court may not have resolved the Kroesens' second claim, thus depriving this court of

9

jurisdiction, *see Richmond Am. Homes of Colo., Inc. v. Steel Floors, LLC*, 187 P.3d 1199, 1202 (Colo. App. 2008) (noting that as a general rule, "an entire case must be resolved by a final judgment before an appeal is brought"), a division of this court remanded the case to the district court. The division instructed the district court to ensure that a final judgment entered on all of the Kroesens' claims. The district court then entered an order dismissing the Kroesens' second claim and noting that a final judgment had been entered on all of their claims.

### III. The District Court Correctly Determined that Tract AB Was the Beneficiary of an Easement to Use the Roads

¶ 23    Shenandoah Association's appeal raises three principal issues.

¶ 24    First, we consider and reject the Kroesens' contention that Shenandoah Association failed to preserve its argument that the recorded documents did not put good faith purchasers of property in Shenandoah Subdivision on notice of the Subject Easement.

¶ 25    Second, we decide whether, under common law principles, the plats amending the declaration for Shenandoah Subdivision contained sufficient specificity to create an easement over the roads benefitting Tract AB. Although we agree with the district court that

"'adjacent subdivisions, and future subdivisions' is a thin description of a dominant estate," we conclude the language is sufficient in light of the "surrounding circumstances, the situation of the parties, and the objects to be obtained." *Lewitz v. Porath Family Tr.*, 36 P.3d 120, 123 (Colo. App. 2001).

¶ 26 Third, because Shenandoah Subdivision and Highlands Subdivision are common interest communities subject to the Colorado Common Interest Ownership Act (CCIOA), §§ 38-33.3-101 to -402, C.R.S. 2019, we also address whether the developer complied with the CCIOA's requirements for creating an easement. The common law and CCIOA tests apply to easements in common interest communities. *See* § 38-33.3-108, C.R.S. 2019 (stating that the "law of real property . . . supplement[s] the provisions of [the CCIOA], except to the extent inconsistent with [the CCIOA]"); § 38-33.3-115, C.R.S. 2019 (explaining that the CCIOA "applies to all common interest communities created within this state").

¶ 27 We hold that the developer complied with both sets of requirements for creating an easement and, therefore, conclude that Tract AB benefits from the Subject Easement.

11

## A. Shenandoah Preserved Its Notice Argument

¶ 28 Because Shenandoah Association raised the notice issue in the district court in its briefing on summary judgment, and because the court considered and rejected the argument, Shenandoah Association is entitled to appellate review of the ruling on whether the owners of land in Shenandoah Subdivision received record notice of the Subject Easement. *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21, 436 P.3d 597, 600 ("If a party raises an argument to such a degree that the [trial] court has the opportunity to rule on it, that argument is preserved for appeal.").

¶ 29 Thus, we hold that Shenandoah Association preserved its notice argument.

## B. We Affirm the District Court's Ruling That, Under the Common Law Test for Creating an Easement, Tract AB Benefits From an Easement Over the Roads

### 1. Legal Authority

¶ 30 We review de novo the court's ruling on summary judgment that Tract AB benefits from an easement over the roads. *See City of Lakewood v. Armstrong*, 2017 COA 159, ¶ 7, 419 P.3d 1005, 1008. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a

12

matter of law.  C.R.C.P. 56(c); *Pulte Home Corp. v. Countryside Cmty. Ass'n,* 2016 CO 64, ¶ 22, 382 P.3d 821, 826.

¶ 31 Similarly, we review de novo the district court's interpretation of recorded instruments.  *Ryan Ranch Cmty. Ass'n v. Kelley*, 2016 CO 65, ¶ 24, 380 P.3d 137, 142.  We give words and phrases their common meanings and will enforce recorded instruments as written if their meaning is clear.  *Pulte Home,* ¶ 23, 382 P.3d at 826.

¶ 32 "An easement is a right conferred by grant, prescription or necessity authorizing one to do or maintain something on the land of another . . . ."  *Lazy Dog Ranch v. Telluray Ranch Corp.,* 965 P.2d 1229, 1234 (Colo. 1998).  No particular words are necessary to grant an easement, so long as the instrument identifies with "reasonable certainty" the easement created and the dominant and servient tenements.  *Hornsilver Circle, Ltd. v. Trope,* 904 P.2d 1353, 1356 (Colo. App. 1995).  (A dominant estate is the property that benefits from the easement, while the servient estate is the property on which the easement is located.  *Lazy Dog,* 965 P.2d at 1234.)  "When interpreting an easement, we must consider the language used in the instrument, the circumstances surrounding its

creation, and the purpose for which it was created." *Lewitz*, 36 P.3d at 122.

## 2. Application

¶ 33     Shenandoah Association contends that the "isolated, generic reference" to the roads being for the benefit of the developer and "adjacent subdivisions" in the amended declaration for Shenandoah Subdivision does not place good faith purchasers of property within Shenandoah Subdivision on notice of the Subject Easement. It argues that, because *Lewitz* held that a valid easement requires notice to good faith purchasers of the nature and extent of the easement, *see id.* at 124, the Subject Easement fails the common law notice test. We disagree.

¶ 34     The Kroesens contend that plats amending the declaration for Shenandoah Subdivision created the Subject Easement. They point to the plat entitled "Shenandoah Category 1 Project 88-130," which stated that "General Common Elements . . . [are] for the use and benefit of the Developer, the owners of the lots within this subdivision, subdivisions previously filed, [and] *adjacent subdivisions . . . .*" (Emphasis added.) ("General Common Elements" include easements. *See* § 38-33.3-103(5)(b), (25).)

14

¶ 35    Although, as noted above, no particular language is required to create an easement, the language must still describe the easement, dominant estate, and servient estate "with reasonable certainty." *Hornsilver Circle*, 904 P.2d at 1356. The amendments to the declaration for Shenandoah Subdivision referring to "General Common Elements," noting "the purpose of ingress and egress" and creating Colonial Drive and Blue Ridge Road, describe the nature of the Subject Easement with reasonable certainty. The plats also provide reasonable certainty as to the identity of the servient estate — Shenandoah Subdivision — where the roads are located.

¶ 36    Further, the reference to "adjacent subdivisions" is sufficient to describe a dominant estate — Highlands Subdivision — and specifically those tracts in Highlands Subdivision that abut one of the roads. Only under the narrowest possible reading of the plats could a reference to "adjacent subdivisions" not encompass a tract carved out of the original property, such as Tract AB, that borders Blue Ridge Road.

¶ 37    Thus, we agree with the district court's holding that the language of the plats for Shenandoah Subdivision places good faith purchasers of tracts in Shenandoah Subdivision on notice of the

15

Subject Easement. We reach this conclusion based on the "language used in the instrument, the circumstances surrounding [the easement's] creation, . . . the purpose for which [the easement] was created," and the record notice in Shenandoah Subdivision's chain of title describing the Subject Easement. *Lewitz*, 36 P.3d at 122.

¶ 38 Lastly, in light of our reading of the amendments to the declaration for Shenandoah Subdivision, we need not address whether the vote of the Board of Directors of Shenandoah Homeowners Association was sufficient, with or without a vote of approval by the members of the Shenandoah Homeowners Association, to create a valid easement over the roads. And we need not reach Shenandoah Association's argument that the developer and the former owner believed that the owner of Tract AB did not benefit from an easement. Even if this contention is correct, which we cannot determine from the record, it is irrelevant to the existence of an easement.

C. The Developer Also Complied With the CCIOA's Requirements for Creating an Easement

¶ 39     Because the developer created the Subject Easement in plats amending the declaration to Shenandoah Subdivision, we must next consider whether the developer complied with the CCIOA's requirements for creating an easement.  The Subject Easement would be invalid if the developer did not comply with the common law and CCIOA requirements for easements.  *See* §§ 38-33.3-108, -115.

## 1.    Legal Authority

¶ 40     The meaning and effect of statutes are questions of law that we review de novo.  *Ryan Ranch*, ¶ 25, 380 P.3d at 142.  When interpreting statutory provisions, "[o]ur objective is to effectuate the intent and purpose of the General Assembly."  *Perfect Place, LLC v. Semler*, 2018 CO 74, ¶ 40, 426 P.3d 325, 332 (quoting *Trujillo v. Colo. Div. of Ins.*, 2014 CO 17, ¶ 12, 320 P.3d 1208, 1212-13).  "To determine the legislature's intent, we look first to the plain language of a statutory provision."  *Id.*  Where clear, "we apply the plain and ordinary meaning of the provision," *id.*, "because the General Assembly is presumed to have meant what it plainly said," *Miller v. Curry*, 203 P.3d 626, 629 (Colo. App. 2009) (quoting *Silverview at Overlook, LLC v. Overlook at Mt. Crested Butte Ltd. Liab. Co.*, 97 P.3d

17

252, 255 (Colo. App. 2004)). When "reading a statute . . . or a recorded instrument, we consider the text as a whole, harmonizing, when possible, all sections or provisions." *McMullin v. Hauer*, 2018 CO 57, ¶ 13, 420 P.3d 271, 274.2.

## 2. Application

¶ 41    Shenandoah Association contends that the developer did not comply with the requirements for creating easements found in the CCIOA. *See Perfect Place*, ¶¶ 41-48, 426 P.3d at 332-34; *Ryan Ranch*, ¶¶ 33-52, 380 P.3d at 144-48. It specifically asserts that the developer did not properly exercise its "development rights" when it sought to create the Subject Easement. In support of this argument, Shenandoah Association alleges that the developer (1) failed to include a legally sufficient description of the Subject Easement in the plats amending the declaration for Shenandoah Subdivision and (2) did not record the Highlands Plat — the only plat expressly referencing an easement for the benefit of the owners of Tract AB — in the chain of title for Shenandoah Subdivision. Thus, according to Shenandoah Association, the Subject Easement is not binding on any property within Shenandoah Subdivision. We consider and reject these arguments below.

18

### a. The Developer Properly Exercised Development Rights When It Created the Subject Easement

¶ 42    The developer properly exercised development rights when it sought to create the Subject Easement through amendments to the declaration for Shenandoah Subdivision.  Section 38-33.3-103(14)(b) defines "development rights" as "any right or combination of rights reserved by a declarant in the declaration to . . . [c]reate . . . common elements, or limited common elements within a common interest community."  Section 38-33.3-103(5)(b) defines "common elements" as "any real estate within a planned community owned or leased by the association, other than a unit."  And the definition of "real estate" in section 38-33.3-103(25) includes "interests that, by custom, usage, or law, pass with a conveyance of land."  Such interests include appurtenant easements, such as the Subject Easement, which run with a particular property.  *See* Restatement (Third) of Property: Servitudes § 1.5 (Am. Law Inst. 2000) (distinguishing between "appurtenant easements," which are tied to ownership or occupancy of a particular parcel, and "easements in gross," which are not).

¶ 43    The developer reserved for itself a development right to "establish a non-exclusive easement and right of way [over] all or any portion of the [original property]" in the declaration for Shenandoah Subdivision and later exercised that right in plats amending the declaration.

¶ 44    Shenandoah Association misquotes section 38-33.3-209, C.R.S. 2019, in arguing that "*each* map or plat *shall* contain a legally sufficient description of *all* easements serving or burdening any portion of the common interest community."  (Emphases added by Shenandoah Association.)

¶ 45    Rather, section 38-33.3-209(2)(e) says that "each map shall show the following, except to the extent that such information is contained in the declaration or on a plat: . . . To the extent feasible, a legally sufficient description of all easements serving or burdening any portion of the common interest community."  Thus, if "a legally sufficient description of all easements" appears in "the declaration or on a plat," the plain language of section 38-33.3-209(2)(e) does not require duplicative language in every plat amending a declaration.

¶ 46    Shenandoah Association does not dispute that the amended declaration for Shenandoah Subdivision generally describes the Subject Easement. Under the CCIOA, the developer was not required to expressly reference the Subject Easement in each plat. § 38-33.3-209(1) (specifying that "[t]he requirements of this section shall be deemed satisfied so long as all of the information required by this section is contained in the declaration, a map or a plat, or some combination of any two or all of the three"); § 38-33.3-209(2)(e); *Ryan Ranch*, ¶ 34, 380 P.3d at 144.

¶ 47    Shenandoah Association essentially challenges the sufficiency of the description of the Subject Easement in the amended declaration for Shenandoah Subdivision. As explained above, under the common law rule, the developer adequately put the owners of lots in Shenandoah Subdivision on notice that the future owners of lots adjacent to Shenandoah Subdivision would benefit from an easement over the roads.

¶ 48    Unlike the other requirements for maps set forth in the CCIOA, descriptions of easements need only be "legally sufficient." *See* § 38-33.3-209(2)(e). This caveat demonstrates that section 38-33.3-209(2)(e) does not impose a more stringent requirement for

descriptions of easements than those required under the common law.  Thus, we conclude that the developer satisfied the requirements for describing an easement set forth in the CCIOA.

b.  The Developer's Recorded Plats Comply with Section 38-33.3-217

¶ 49  We also disagree with Shenandoah Association's argument that the developer ran afoul of the requirements of section 38-33.3-217, C.R.S. 2019.  Section 38-33.3-209(6) requires the declarant to record an amendment to the original declaration for the subdivision when exercising a development right.  Section 38-33.3-217(3), in turn, requires that "[e]very amendment to the declaration must be recorded in every county in which any portion of the common interest community is located."  Under the plain language of section 38-33.3-217(3), the developer satisfied its obligation under the CCIOA to amend the declaration for Shenandoah Subdivision when it exercised its development rights by creating the Subject Easement.  The developer recorded in La Plata County amendments to the declaration for Shenandoah Subdivision that referenced the Subject Easement and said that the "General Common Elements,"

22

which included the Subject Easement, were "for the use and benefit of . . . adjacent subdivisions."

c.    Prospective Buyers of Shenandoah Subdivision Tracts Are on Record Notice of the Easement From Shenandoah Subdivision's Plats

¶ 50    We do not agree that a prospective buyer of property in Shenandoah Subdivision would lack notice of the Subject Easement. As explained above, the plats amending the declaration for Shenandoah Subdivision created a valid easement. The Subject Easement is valid even though the amendments to the declaration for Shenandoah Subdivision did not expressly say that the Subject Easement benefits the owners of Tract AB (or the owners of any other lot adjacent to Shenandoah Subdivision).

¶ 51    It is of no consequence that the Highlands Plat does not appear in a title search for Shenandoah Subdivision because the search would reveal documents in the chain of title for Shenandoah Subdivision that created the Subject Easement and indicated it and the other "General Common Elements" benefited adjacent subdivisions.

¶ 52     In sum, we hold that the district court did not err by granting summary judgment to the Kroesens on their claim for a declaratory judgment regarding the existence of the Subject Easement.

### IV.    The Kroesens Are Not Entitled to Recover Lost Profits on Their Claim for Intentional Interference with Contract

¶ 53     The Kroesens contend that the district court erred by holding they are not entitled to recover lost profits on their claim for intentional interference with contract.  They argue that the Colorado Supreme Court has approved an award of lost profits in cases involving similar facts.  *See, e.g.*, *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1119-20 (Colo. 1990).

¶ 54     The Kroesens ask us to extend the narrow holding of *Westfield Development,* which involved property whose value had plummeted after a proposed sale fell through.  They contend that lost profits are a proper measure of damages in claims involving intentional interference with a real estate contract, even where the subject real estate has not become unmerchantable.  We decline to do so and affirm the district court's decision on the damages awardable to the Kroesens on their intentional interference claim.

## A.    Standard of Review

¶ 55    A judgment following a bench trial presents a mixed question of fact and law.  *Sandstead-Corona v. Sandstead*, 2018 CO 26, ¶ 37, 415 P.3d 310, 317.  We review the trial court's factual findings under a clear error standard, but review its legal conclusions de novo.  *Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 2013 COA 87, ¶ 13, 350 P.3d 863, 867, *aff'd*, 2015 CO 24, 346 P.3d 1035.

¶ 56    We also review de novo the trial court's "application of governing legal standards," *Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1257 (Colo. App. 2008), including "[t]he proper measure of damages," *Taylor Morrison of Colo., Inc. v. Terracon Consultants, Inc.*, 2017 COA 64, ¶ 23, 410 P.3d 767, 772.  "However, the fact finder has the sole prerogative to assess the amount of damages and its award will not be set aside unless it is manifestly and clearly erroneous."  *Morris*, 201 P.3d at 1257.

## B.    Legal Authority

¶ 57    The standard measure of damages for the breach of a contract for the sale of real estate is the difference between the contract price and the fair market value of the property at the time of breach.  *Westfield Dev.*, 786 P.2d at 1120.  But intentional interference with

contract is a tort. *Id.* Thus, for such claims, "[t]he measure of damages may . . . depart from contractual damages *when necessary* to make the innocent party whole." *Id.* (emphasis added).

¶ 58 "A bedrock goal of tort law is to 'make the plaintiff whole.'" *LeHouillier v. Gallegos*, 2019 CO 8, ¶ 44, 434 P.3d 156, 164. Tort law disfavors windfall damage awards that put the plaintiff in a better financial situation than his or her position before the injury. *Id.* "[A] plaintiff may not receive double recovery for the same losses arising from the same injury." *Taylor Morrison*, ¶ 27, 410 P.3d at 773.

## B. Analysis

¶ 59 The record and legal precedent support the district court's determination that the Kroesens are not entitled to recover lost profits. In *Westfield Development*, the supreme court held that lost profit damages are awardable in intentional interference with contract cases "when necessary to make the innocent party whole." 786 P.2d at 1120. This rule gives district courts flexibility in computing damages, so they can fashion remedies that "make the plaintiff whole" under "unique circumstances." *See LeHouillier*, ¶ 44, 434 P.3d at 164; *Westfield Dev.*, 786 P.2d at 1120.

¶ 60     We agree with the district court that the facts underlying the Kroesens' case differ from those in *Westfield Development*.  In that case, the supreme court affirmed an award of lost profits because of "unique circumstances" that rendered the real estate unmerchantable and a sale at the contract price impossible. *Westfield Dev.*, 786 P.2d at 1120.  The property at issue in *Westfield Development* was "unmerchantable" because of the "very limited number of [potential] buyers"; the defendant had reduced the number of potential buyers after selling a similar property to the same entity, which had declined to purchase the subject property; and, after the plaintiff sought to mitigate its damages by selling the property, "the bottom fell out of the market," thereby making a sale at the contract price impossible.  *Id.*

¶ 61     *Westfield Development*'s unique circumstances are not present here.  The district court did not award lost profits to the Kroesens because, as the Kroesens' expert witness explained, the value of Tract AB at the time of the trial was "difficult to tell on the evidence the Court has received," and an award of lost profits would be "speculative."  The court noted that the Kroesens planned to sell, and had already listed, Tract AB at a higher price than the price

specified in the terminated contract. The court reasoned that an award of lost profits to the Kroesens would likely result in a double recovery.

¶ 62 Instead of lost profits, the court awarded the Kroesens their cost of maintaining Tract AB for approximately five years (approximately three years before the judgment and two years thereafter). Because it had taken the Kroesens approximately five years to enter into the contract to sell Tract AB and there was no record evidence of a material decline in the value of their property or the local real estate market, the record supports the court's calculation of damages.

¶ 63 Unlike the property in *Westfield Development*, as the district court found, Tract AB still had market value and would likely eventually be sold. Although it may be unclear when that sale will occur, the Kroesens will likely recover the loss of their anticipated profits when they sell the property.

¶ 64 The Kroesens further contend that, in calculating damages, the district court erred by comparing Tract AB to a nearby lot that was sold in October 2017. They assert that this error invalidates the court's determination that they are not entitled to lost profits

28

because their property has lost value since 2015 and they will be forced to sell their land for less than the price specified in the terminated contract.

¶ 65    We do not agree. While the Kroesens' expert testified that the comparative tract had "similar views" to, and was "more level" than, Tract AB, she also testified that, unlike Tract AB, the comparative lot does not have "half of [a] pond." Because the expert's testimony was unclear as to the comparative value of Tract AB and the other lot, coupled with the record evidence that Tract AB retained market value and would eventually sell at or above the contract price specified in the terminated contract, we perceive no error in the district court's measure of damages.

## V.    Conclusion

¶ 66    The district court's judgment is affirmed.

JUDGE FOX and JUDGE BERGER concur.